# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| STEPHANIE PITTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:07CV00111LMB |
| | ) | |
| RIPLEY COUNTY MEMORIAL | ) | |
| HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court upon plaintiff's Complaint alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c).

Presently pending before the court is Defendant Ripley County Memorial Hospital's ("RCMH") Motion for Summary Judgment. (Document Number 21). Plaintiff has filed Plaintiff's Suggestions in Opposition to Defendant's Motion for Summary Judgment. (Doc. No. 23). Defendant has filed a Reply Memorandum in Support of Defendant's Motion for Summary Judgment. (Doc. No. 24).

1

**<u>Factual Background</u>**[1]

Viewed in the light most favorable to the plaintiff, the record reveals the following facts. Plaintiff was employed by RCMH on one or more occasions, with her last employment being from August 2003 to March 7, 2005. Plaintiff filed a Petition against RCMH in the Circuit Court of Ripley County, Missouri, on June 29, 2006 ("State Court Case"). The state court case was transferred to Butler County on plaintiff's Motion for Change of Venue. In the state court case, plaintiff claimed that she was subject to unlawful retaliation and was denied a promotion for which she was qualified. Plaintiff's claim was set forth in a charge of discrimination dated August 26, 2005. In the charge of discrimination, plaintiff claimed that she was denied a promotion in retaliation for engaging in protected activity, reporting sexual harassment. Plaintiff alleged in the state court case that she was denied a promotion for the position of Emergency Room Supervisor despite having the necessary qualifications, for making a prior complaint in November 2004 against Dr. Martin McDonald after he provided her with a sexually explicit disk. Plaintiff claimed that she was told that she did not receive the promotion because she violated the "golden rule" by making a complaint against a doctor.

Plaintiff filed her Complaint in this action on July 20, 2007. In her Complaint, plaintiff alleges that she was the victim of intentional discriminatory policies and practices. Plaintiff's Complaint stems from a second charge of discrimination filed by plaintiff, in which she alleges: "In August 2005, I filed a charge of discrimination with the Missouri Commission on Human

_____

[1]The court's recitation of the facts is taken from defendant's Statement of Uncontroverted Material Facts, plaintiff's Response to Defendant's Statement of Undisputed Material Facts, Plaintiff's Statement of Uncontroverted Material Facts, and defendant's Response to Plaintiff's Responses to Defendant's Statement of Uncontroverted Material Facts.

Rights. On September 6, 2005, September 7, 2005 and December 5, 2005, I received written warnings for conduct of which I was not guilty. Since my charge of discrimination, I have been subjected to retaliatory harassment. The Director of Nursing, Melanie Mobley stated that my charge created problems because everyone needed to be questioned and that I should never have filed a complaint against a Doctor. On March 7, 2006, because of the intolerable working conditions, I was forced to resign my employment." (Exhibit C, Charge of Discrimination dated July 11, 2006).

In her Complaint, plaintiff again alleges that she was denied a promotion for the position of Emergency Room Supervisor, despite having the necessary qualifications, for making a prior complaint in November 2004 against Dr. Martin McDonald after he allegedly provided her with a sexually explicit disk. Plaintiff claims she was told by the Director of Nursing in August 2005, after she was denied the promotion, that she violated the "golden rule" by reporting a doctor. This was the only time plaintiff alleges that she was told by Ms. Mobley that she had violated the "golden rule." Barbara Masching, an employee of RCMH in the medical records department, testified that she has heard about the "golden rule" at the hospital and she understands it to mean you do not go against a physician. (Pl's Ex. C, Deposition of Barbara Masching, p. 7). Gary Morgeson, an employee of Ripley County Ambulance Service from 1998 to 2006, testified that Ms. Mobley told him that the "golden rule" was to protect the doctor at all costs. (Pl's Ex. K, Deposition of Gary Morgeson, p. 15). Plaintiff made allegations regarding the "golden rule" in her first charge of discrimination, which was the basis of the state court case. The issue of whether plaintiff was denied a promotion has been determined by a state court jury and is currently on appeal by plaintiff.

Plaintiff alleges that she received written warnings for conduct of which she was not guilty on September 6, 2005, September 7, 2005, and December 5, 2005, and that she was forced to resign her employment on March 7, 2006. Plaintiff received a written warning on September 6, 2005, for an incident that occurred on August 30, 2005. Plaintiff was cited for "Unprofessional Work Behavior" for stopping a male in the hallway and kissing him on the cheek. (Def's Ex. J). Plaintiff denied the incident of kissing a man on the cheek, and stated that the write-up related to her reporting sexual harassment.

Peggy Teasdale, RCMH's Human Resources Manager, stated that she did nothing in response to plaintiff's allegation that the September 6, 2005 write-up was retaliation, because "that was being handled by Administration at that point which was Melanie Mobley which is who I would have forwarded it had I known." (Pl's Ex. D, Deposition of Peggy Teasdale, p. 18). Ms. Teasdale is unaware of an investigation conducted by the hospital into Ms. Pittman's allegation of retaliation subsequent to plaintiff's charge of discrimination.

On or about September 7, 2005, plaintiff, as part of a job evaluation, was cited for "laughing at a fellow employee about how to work a c-collar and then telling the RN on the next shift about the incident..." (Def's Ex. L). Patricia Pruitt testified that she complained to her supervisor after plaintiff laughed at her because she did not know how to fix a c-collar. (Def's Ex. P, Deposition of Patricia Pruitt, p. 19). Plaintiff denies the incident. In response to the write-up, plaintiff disagreed and stated that she believed the write-up was "retaliation." (Def's Ex. L). The September 7, 2005 write-up was done by Lee Ann Stanfill, plaintiff's Supervisor.

On December 5, 2005, plaintiff received a written warning for inappropriate behavior by her supervisor, Lee Ann Stanfill, for being rude to a charge nurse on November 28, 2005. In

response to the warning, plaintiff indicated that she disagreed with the statement. (Def's Ex. M).

Plaintiff also received a verbal and written warning for absenteeism on August 30, 2005, for failing to follow the hospital's call-in policy. Plaintiff admits that the write-up for absenteeism was justified.

Plaintiff resigned her employment with RCMH on March 7, 2006, because she felt that she had been "mistreated related to a pending investigation with the Board of Labor." (Def's Ex. O). Plaintiff stated that she had a question and went to talk to Melanie Mobley on the morning she resigned her employment with RCMH. Plaintiff claims that Ms. Mobley screamed at her at the nurse's station and told her that "she wasn't dealing with me, that she couldn't deal with me, that I would have to go to Ray [Freeman] with any and all questions, blah, blah, blah..." (Def's Ex. I, Deposition of Stephanie Pittman, p. 58).

On October 8-10, 2008, a jury trial was held in the state court case. Plaintiff was allowed to testify in the state court case concerning the written complaints against her on September 6, 2005, September 7, 2005, and December 5, 2005, although the jury was only charged with the task of determining whether the denial of the promotion was retaliation. During the state court case, plaintiff introduced into evidence her letter of resignation dated March 7, 2006. Following a three-day jury trial, the jury returned a verdict in favor of defendant. The trial court entered judgment in favor of defendant on October 28, 2008. Thereafter, plaintiff filed a Motion for New Trial alleging certain errors during trial in the introduction and exclusion of evidence, which was denied on January 12, 2009.

**Discussion**

In its Motion for Summary Judgment, defendant argues that some of the issues presented in plaintiff's Complaint have been judicially decided in the state court case and plaintiff should, therefore, be precluded from using this evidence in this action. Defendant also contends that plaintiff has failed to meet her burden as there is no causal connection between the protected activity and the allegations against RCMH, and even assuming plaintiff meets her initial burden, RCMH had legitimate, non-discriminatory reasons for the write-ups. Defendant thus claims that it is entitled to judgment as a matter of law.

**A.      Summary Judgment Standard**

A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at

249, 106 S. Ct. 2510-2511. The non-movant must set forth specific facts, by affidavit or

otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v.

Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court

has found that "[s]ummary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the federal rules as a whole, which are

designed to secure the just, speedy, and inexpensive determination of every action." Id. at 327,

106 S.Ct. 2555 (quoting Fed. R. Civ. P. 1).

### B. Plaintiff's Claims of Retaliation

Plaintiff argues that she did not receive a promotion to the position of Emergency Room

Supervisor because she violated the "golden rule" when she made a complaint about Dr.

McDonald. Plaintiff also claims that on September 6, 2005, September 7, 2005, and December 5,

2005, she received written warnings for conduct of which she was not guilty. Plaintiff alleges that

Ms. Mobley told her that her charge of discrimination had created problems and that she should

never have filed a charge with the Missouri Commission on Human Rights. Plaintiff contends that

on March 7, 2006, she was forced to resign her employment. Plaintiff argues that due to her

complaints of discrimination, defendant retaliated against her, resulting in her being unfairly

disciplined and constructively discharged.

To survive a motion for summary judgment in race discrimination cases, a plaintiff must

establish a genuine issue of material fact regarding the issue of intentional discrimination. A

plaintiff may demonstrate discrimination by either direct or indirect evidence. See Nitschke v.

McDonnell Douglas Corp., 68 F.3d 249, 251 (8th Cir. 1995).

1.      **Issue Preclusion**

As an initial matter, defendant argues that plaintiff's claim that she was denied a promotion for which she was qualified should not be considered by this court, nor should evidence that she was told she violated the "golden rule," as this forms the basis for her charge of discrimination in the state court case.

Collateral estoppel is a legal doctrine that "bar[s] the relitigation of factual or legal issues that were determined in a prior...court action" and applies to bar relitigation in federal court of issues previously determined in state court. Johnson v. Miera, 926 F.2d 741, 743 (8th Cir. 1991). The substantive law of the forum state is applied, giving a state court judgment preclusive effect if a court in that state would do so. See Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1475 (8th Cir. 1994). Missouri courts consider four factors in applying collateral estoppel: (1) the issues in the present case and the prior adjudication must be identical; (2) the judgment in the prior adjudication must be on the merits; (3) "the party against whom collateral estoppel [is] asserted [must have been] the same party or in privity with a party in the prior adjudication," and (4) "the party against whom collateral estoppel is asserted [must] have [had] a full and fair opportunity to litigate the issue in the prior suit." State v. Nunley, 923 S.W.2d 911, 922 (Mo. 1996) (en banc). Additionally, "[t]he doctrine applies only to those issues that were necessarily and unambiguously decided." Id. at 922.

In the state court case, plaintiff claimed that she was subject to unlawful retaliation under the Missouri Human Rights Act and was denied a promotion for which she was qualified. Plaintiff's claim was set forth in a charge of discrimination dated August 26, 2005. Plaintiff alleged that she was denied a promotion for the position of Emergency Room Supervisor despite

having the necessary qualifications, for making a prior complaint in November 2004 against Dr. Martin McDonald after he provided her with a sexually explicit disk. Plaintiff claimed that Ms. Mobley told her that she did not receive the promotion because she violated the "golden rule" by making a complaint against a doctor. On October 10, 2008, following a three-day jury trial, the jury returned a verdict in favor of defendant. The trial court entered judgment in favor of defendant on October 28, 2008.

To prove a violation of the MHRA, a plaintiff alleging unlawful retaliation must prove (1) that he engaged in protected activity, and (2) that "as a direct result, he ...suffer[ed]...damages due to an act of reprisal." Keeney v. Hereford Concrete Prods., 911 S.W.2d 622, 625 (Mo. 1995) (en banc).

Under Missouri law, "[w]hen a final judgment is rendered by a trial court, it constitutes a final adjudication on the merits, even though it is appealed." Consumers Oil Co. v. Spiking, 717 S.W.2d 245, 251 (Mo. Ct. App. 1986). See also Home Ins. Co. v. Butler, 922 S.W.2d 66, 68 (Mo. Ct. App. 1996) ("the pendency of an appeal does not eradicate the finality of a judgment of conviction for collateral estoppel purposes").

The undersigned finds that relitigation of the issue of whether defendant unlawfully retaliated against plaintiff for making a complaint against Dr. McDonald by denying plaintiff a promotion for the position of Emergency Room Supervisor is precluded by the doctrine of collateral estoppel. As such, evidence regarding the promotion is not relevant to this case and will not be considered.

Defendant also argues that plaintiff should be precluded by the doctrine of collateral estoppel from re-litigating the issue of the "golden rule." Plaintiff presented the "golden rule"

evidence to demonstrate that defendant retaliated against her by denying her the promotion in the state court action. Plaintiff now offers the same evidence in support of her retaliation claim stemming from the three write-ups and constructive discharge. Plaintiff contends that the evidence is admissible as relevant background to later discriminatory acts.

Although the doctrine of collateral estoppel precludes plaintiff from presenting evidence that Ms. Mobley stated that she did not get the promotion due to the "golden rule," plaintiff is not precluded from presenting all evidence of statements regarding the "golden rule." Plaintiff has presented deposition testimony from two individuals regarding the "golden rule" at RCMH. Plaintiff presented the same evidence in the state court case. Although the jury ultimately determined that defendant did not retaliate against plaintiff by denying her a promotion, the jury did not decide whether these "golden rule" statements were made. As such, plaintiff may use evidence regarding the "golden rule" statements as background evidence in support of her claim of retaliation based on the subsequent write-ups and constructive discharge. Similarly, plaintiff may present evidence of defendant's lack of response to plaintiff's complaints of retaliation. See Wedow v. City of Kansas City, Missouri, 442 F.3d 661, 670 (8th Cir. 2006) (evidence presented in disparate treatment claim as background evidence not barred by prior hostile work environment claim when recovery in disparate treatment claim limited to acts of disparate treatment occurring in a later time frame).

Plaintiff has also set forth many additional alleged uncontested facts regarding Dr. McDonald's employment. These facts are irrelevant to this action and will not be considered.

**2. Plaintiff's Prima Facie Case**

Plaintiff argues that she has presented direct evidence of a retaliatory motive. Specifically,

plaintiff contends that the "golden rule" statements, although they predate the write-ups, are unquestionably related to the write-ups.

"Direct evidence" refers to the causal strength of proof, not whether the evidence is circumstantial. King v. Hardesty, 517 F.3d 1049, 1057 (8th Cir. 2008). If the evidence, even if circumstantial, shows a "specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated[] the adverse employment action," summary judgment may be avoided. Id. Direct evidence does not extend to "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." Gross v. FBL Fin. Servs., Inc., 526 F.3d 356, 359 (8th Cir. 2008) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 109 S.Ct. 1775, 1804, 104 L.Ed.2d 268 (1989)).

Plaintiff has failed to present direct evidence of retaliation. Plaintiff has not demonstrated that the "golden rule" statements were causally linked to the write-ups or alleged constructive discharge. As such, plaintiff's claims of discrimination will be analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). See Stewart v. Independent School Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007). Under this analysis, the plaintiff has the initial burden to establish a prima facie case, consisting of evidence: (1) that he or she engaged in activity protected by Title VII; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) a causal connection exists between the protected activity and the adverse employment action. Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 713-714 (8th Cir. 2000). The same standards apply to MHRA retaliation claims. Id. If the plaintiff succeeds in establishing a prima

facie case, the burden then shifts to the defendant who is required to produce some legitimate, non-discriminatory reason for the adverse action. Id. If the defendant articulates such a reason, the burden returns to the plaintiff to establish that the employer's reason was a pretext for retaliation. See id. "The threshold test of proof necessary to establish a prima facie case is minimal." Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1022 (8th Cir. 1998).

The retaliation prohibition in the MHRA parallels the provision in Title VII. See Richey v. City of Independence, 540 F.3d 779, 783 (8th Cir. 2008). The prohibitions on retaliation in the MHRA and Title VII are not identical, but the differences between the statutes are not at issue here. See id. Thus, the court will look to Eighth Circuit precedents on retaliation in the Title VII context for guidance in evaluating plaintiff's claim under the MHRA. See id.

**a.      Statutorily Protected Activity**

Defendant argues that there is no evidence that RCMH was aware of the protected activity, the charge of discrimination, at the time of the September 6, 2005, and September 7, 2005 write-ups. Defendant states that the charge was filed on August 26, 2005, and the letter to RCMH from the MCHR is dated September 9, 2005.

Title VII provides that an employer may not discriminate against an employee on the basis that the employee "has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). Title VII's prohibition against retaliatory discrimination protects activities ranging from filing a complaint to expressing a belief that the employer has engaged in discriminatory practices. See Buettner, 216 F.3d at 714. To demonstrate the presence of protected opposition, a plaintiff must show a reasonable belief that his employer engaged in a discriminatory employment practice. Sisco v. J.S. Alberici Const. Co., 655 F.2d 146, 150 (8th Cir. 1981). A

plaintiff must show the employer had actual or constructive knowledge of the protected activity in order to establish a prima facie case of retaliation. See Buettner, 216 F.3d at 715.

The undersigned finds that plaintiff has presented sufficient evidence to demonstrate that defendant had knowledge of plaintiff's protected activity. Specifically, on August 15, 2005, upon learning of the promotion decision, plaintiff stated to Ms. Mobley "that's because I filed the sexual harassment complaint is the reason that I didn't get the job." (Pl's Ex. I, Deposition of Melanie Mobley, p. 36). Ms. Mobley told Mr. Freeman that Ms. Pittman "believed she didn't get the job because of that, because of the discrimination suit." (Pl's Ex. A, Deposition of Ray Freeman, p. 36-37). Defendant contends that this evidence does not establish that Ms. Mobley was "notified" by plaintiff that a Complaint had been filed with the EEOC or the MCHR with regard to her claim that she had been denied a promotion because she had reported the harassing conduct in November 2004. It is not necessary, however, that plaintiff file a formal complaint. It is sufficient that plaintiff communicated her belief to Ms. Mobley on August 15, 2005 that RCMH had engaged in unlawful retaliation.

**b.      Adverse Employment Action**

Defendant argues that plaintiff has failed to demonstrate that she suffered a materially adverse employment action. Plaintiff contends that the three written warnings she received constitute adverse employment action.

In Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the Supreme Court recognized that the anti-retaliation provision of Title VII "is not limited to discriminatory actions that affect the terms and conditions of employment" because "[a]n employer can effectively retaliate against an employee by taking actions not directly

related to his employment or by causing him harm outside the workplace." Id. at 63-64, 126 S.Ct. 2412. The Court held that "a plaintiff [alleging retaliation] must show that a reasonable employee would have found the challenged action materially adverse." Id. at 68, 126 S.Ct. 2415. The adversity must be *material* so as to separate significant from trivial harms. Id. Petty slights, minor annoyances, personality conflicts, and snubbing by supervisors do not create such significant harms. Id. Instead, the anti-retaliation provision of Title VII seeks to prevent employer interference with unfettered access to the Title VII remedial mechanisms by "prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." Id. (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 346, 117 S.Ct. 843, 848, 136 L.Ed.2d 808 (1997)). In deciding whether an action would be adverse to a "reasonable employee," this Court must consider the specific context of the action. Id. at 69, 126 S.Ct. 2415.

Plaintiff received three write-ups following her complaints of retaliation. The threat of receiving written warnings from one's supervisor could reasonably deter a victim of discrimination from complaining of the discrimination. As such, plaintiff has sufficiently demonstrated that she suffered a materially adverse employment action.

**c.      Causal Connection**

Defendant argues that plaintiff has failed to prove a causal connection between the three write-ups and her claim of constructive discharge and the protected activity of filing a charge of discrimination.

"To prove a causal connection under the third element, a plaintiff must prove that an employer's retaliatory motive played a part in the adverse employment action." Gilooly v. Mo.

<u>Dep't of Health & Senior Servs.</u>, 421 F.3d 734, 739 (8th Cir. 2005). Direct evidence is not required, rather "'[e]vidence that gives rise to an inference of retaliatory motive on the part of the employer is sufficient to prove a causal connection.'" <u>Id.</u> at 739-740 (quoting <u>Kipp v. Mo. Highway & Transp. Comm'n</u>, 280 F.3d 893, 896-97 (8th Cir. 2002)). "The timing of a plaintiff's discharge in relation to his protected activity can sometimes establish causation for the purpose of establishing a prima facie case." <u>Sherman v. Runyon</u>, 235 F.3d 406, 410 (8th Cir. 2000).

In this case, plaintiff filed her charge of discrimination on August 26, 2005. Plaintiff received the write-ups on September 6, 2005, September 7, 2005, and December 5, 2005, and was allegedly constructively discharged on March 7, 2006. As such, the first alleged act of retaliation occurred approximately three weeks after plaintiff filed her charge of discrimination. The Eighth Circuit has held similar lengths of time to be sufficient to establish causation. <u>See Smith v. Allen Health Systems, Inc.</u>, 302 F.3d 827, 833 (8th Cir. 2002) (two weeks); <u>Sprenger v. Federal Home Loan Bank of Des Moines</u>, 253 F.3d 1106, 1113 (8th Cir. 2001) ("matter of weeks"). Considering the temporal proximity of the filing of her charge of discrimination with the first write-up, plaintiff has presented sufficient evidence to establish causation. Plaintiff has thus established a prima facie case for retaliation.

## 3.     Defendant's Legitimate, Non-Discriminatory Reasons

Defendant has set forth legitimate, non-discriminatory reasons for the three write-ups. Regarding the September 6, 2005 write-up, defendant states that plaintiff was issued a warning by Ms. Mobley for "Unprofessional Work Behavior" for an incident that occurred on August 30, 2005. (Def's Ex. J). It was reported to Ms. Mobley that plaintiff had stopped a male in the hallway and kissed him on the cheek. Ms. Mobley testified that this incident was reported by the

wife of the man whom plaintiff allegedly kissed, who was an employee of RCMH at the time, and was verified by the man. (Def's Ex. K, Deposition of Melanie Mobley, p. 42-45). Ms. Teasdale testified that she also spoke to the wife of the man who plaintiff allegedly kissed. (Pl's Ex. D, Deposition of Peggy Teasdale, p. 20-21). Plaintiff denies that the incident occurred. (Def's Ex. K). Plaintiff stated that she believed that she was written up in retaliation. (<u>Id.</u>). Plaintiff admitted during her deposition that, had the incident occurred, her behavior would have been inappropriate. (Def's Ex. I, Deposition of Stephanie Pittman, p. 62).

The second write-up occurred on September 7, 2005. Plaintiff was written up by her supervisor, Ms. Stanfill, for laughing at a co-employee about how to work a c-collar and telling an RN on the next shift about the incident. (Def's Ex. L). Patricia Pruitt testified that she complained to her supervisor after plaintiff laughed at her because she did not know how to fix a c-collar. (Def's Ex. P, Deposition of Patricia Pruitt, p. 19). Plaintiff does not deny that this incident occurred or that Ms. Pruitt complained to Ms. Stanfill. Rather, plaintiff stated that she acted "in [a] joking manner." (Def's Ex. L). Plaintiff alleges that she was written-up in retaliation.

The final written warning was issued on December 5, 2005. (Def's Ex. M). Plaintiff received a warning from Ms. Stanfill for "Inappropriate Behavior" for being rude to a charge nurse on November 28, 2005. (<u>Id.</u>). This warning was issued as a result of a handwritten complaint by Kathy Mitchell, a co-employee of plaintiff. (<u>Id.</u>). Plaintiff indicated that she disagreed with Ms. Stanfill's statement regarding the incident. (<u>Id.</u>).

"An employee who engages in protected activity is not insulated from adverse action for violating workplace rules, and an employer's belief that the employee committed misconduct is a

legitimate, non-discriminatory reason for adverse action." Richey, 540 F.3d at 784. "The normal rule in discrimination cases is that if an employer honestly believes that an employee is terminated for misconduct, but it turns out later that the employer was mistaken about whether the employee violated a workplace rule, the employer cannot be liable for discrimination." Id. "If the employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity." Id. "The relevant inquiry is whether the [employer] believed [the employee] was guilty of the conduct justifying discharge." Scroggins v. Univ. of Minn., 221 F.3d 1042, 1045 (8th Cir. 2000).

The undersigned finds that defendant has articulated legitimate, non-discriminatory reasons for the three write-ups. Each write-up was issued in response to complaints about plaintiff's behavior from other employees. Defendant has presented sufficient evidence to corroborate each write-up. The only conduct plaintiff completely denies occurred is the first incident, in which plaintiff allegedly kissed the husband of an employee. Defendant has submitted the deposition testimony of Ms. Mobley and Ms. Teasdale, who both testified that the wife of the man whom plaintiff allegedly kissed complained to them. Ms. Mobley stated that the man whom plaintiff allegedly kissed also confirmed the incident to her. It is apparent from the deposition testimony that Ms. Mobley and Ms. Teasdale believed that the incident occurred. Although plaintiff denies that the first incident occurred and objects to the other two write-ups, the evidence reveals that defendant believed plaintiff was guilty of the conduct that was the subject of each write-up.

Plaintiff also alleges that she was forced to resign her position on March 7, 2006. Plaintiff

17

stated that she went to ask Ms. Mobley a question. Plaintiff claims that Ms. Mobley screamed at her at the nurse's station and told her that "she wasn't dealing with me, that she couldn't deal with me, that I would have to go to Ray [Freeman] with any and all questions, blah, blah, blah..." (Def's Ex. I, Deposition of Stephanie Pittman, p. 58). Ms. Mobley stated that plaintiff told her that she had to talk to her right now and that Ms. Mobley told her that she did not have time because she was busy taking care of a patient. (Def's Ex. K, Deposition of Melanie Mobley, p. 54-55). Ms. Mobley testified that she instructed plaintiff to talk to either Mr. Freeman or Ms. Teasdale if the matter was urgent. (Id.). Ms. Mobley stated that plaintiff submitted her resignation notice approximately five minutes later. (Id.).

To establish a constructive discharge claim under Title VII, plaintiff must show (1) "a reasonable person in [her] situation would find the working conditions intolerable, and (2) the employer intended to force [her] to quit." Anda v. Wickes Furniture Co., 517 F.3d 526, 534 (8th Cir. 2008). "An employee must, however, grant [her] employer a reasonable opportunity to correct the intolerable condition before [she] terminates [her] employment." Turner v. Honeywell Fed. Mfg. & Techs., LLC, 336 F.3d 716, 724 (8th Cir. 2003).

Plaintiff has failed to allege sufficient facts to support a constructive discharge claim. Even assuming plaintiff's account of the incident is true, a reasonable person would not find working conditions intolerable based on a single incident in which a supervisor raised her voice and indicated that she could not "deal with" the employee at that time and that the employee would have to talk to another supervisor. Further, plaintiff did not give Ms. Mobley any time to correct the allegedly intolerable condition, as she submitted her resignation a mere five minutes later. Thus, plaintiff's constructive discharge claim fails.

## 4.     Pretext

Because defendant has produced legitimate, non-discriminatory reasons for the three

write-ups, the burden shifts back to plaintiff to demonstrate pretext.  Although temporal proximity

can sometimes establish causation for the purpose of plaintiff's prima facie cause, "timing on its

own is usually not sufficient to show that an employer's non-discriminatory reason...is merely

pretext."  <u>Sherman</u>, 235 F.3d at 410.  "Instead, the timing of the discharge is usually evaluated in

light of other evidence, or lack of other evidence, in the record."  <u>Id.</u>  "'An employee's attempt to

prove pretext...requires more substantial evidence [than it takes to make a prima facie

case],...because unlike evidence establishing a prima face case, evidence of pretext...[and

retaliation] is viewed in light of the employer's justification.'"  <u>Smith</u>, 302 F.3d at 834 (quoting

<u>Sprenger</u>, 253 F.3d at 1113-14).

Plaintiff first attempts to demonstrate pretext by alleging that there is no basis in fact for

defendant's explanation as to the first write-up.  Plaintiff argues that her own testimony that the

incident did not occur is the only admissible evidence presently before the court with respect to

the first write-up.  Plaintiff contends that she has therefore presented issues of fact as to whether

the first write-up was retaliatory.

Plaintiff's "denials and justifications [are] not evidence that [defendant] fabricated the

charges."  <u>Grey v. City of Oak Grove</u>, 396 F.3d 1031, 1035 (8th Cir. 2005).  "The question is

whether [defendant's] articulated reason...was a pretext for retaliation, not whether [plaintiff]

actually did what [s]he was accused of doing."  <u>Id.</u>  Thus, to avoid summary judgment, plaintiff

must demonstrate more than a genuine issue of material fact as to whether she violated workplace

rules.  <u>Scroggins</u>, 221 F.3d at 1045.  She must show a genuine issue of fact about whether the

employer acted based on an intent to retaliate rather than on a good faith belief that the employee violated a workplace rule.  Id.  In this case, plaintiff presented no evidence to show that defendant did not believe that she had engaged in the conduct that was the subject of the first write-up.  As previously discussed, the admissible deposition testimony of Ms. Mobley and Ms. Teasdale establishes that defendant received a complaint from the wife of the man plaintiff allegedly kissed and that defendant believed that plaintiff was guilty of the conduct.  As such, plaintiff's argument lacks merit.

Plaintiff next argues that she has produced sufficient evidence of intentional retaliation to demonstrate pretext.  Specifically, plaintiff argues that defendant failed to investigate or correct plaintiff's complaints of retaliation pursuant to the hospital's own policy, nurses talked of the "golden rule," plaintiff did not get the promotion to Emergency Room Supervisor due to her complaints about a physician, and Ms. Masching testified that it seemed plaintiff was constantly in the office being written up after the promotion in August.  As will be discussed in more detail below, none of defendant's alleged actions supports her allegation of intentional retaliation.

Plaintiff first contends that defendant failed to investigate plaintiff's claims of retaliation. Plaintiff cites Ms. Teasdale's testimony that Mr. Freeman did not properly address plaintiff's complaints and that failing to correct or investigate retaliation has the effect of condoning it.  Ms. Teasdale testified that she did nothing in response to plaintiff's allegation that the September 6, 2005 write-up was retaliation because she believed "that was being handled by Administration at that point which was Melanie Mobley which is who I would have forwarded it had I known." (Pl's Ex. D, Deposition of Peggy Teasdale, p. 18).  Ms. Teasdale testified that she was unaware of any investigation conducted by the hospital into plaintiff's allegation of retaliation subsequent

to plaintiff's charge of discrimination despite the company's policy to investigate such claims.  (Id. at 24).  Ms. Teasdale acknowledged that doing nothing was inappropriate and that Mr. Freeman did not take plaintiff's complaints as seriously as he should have in her opinion.  (Id. at 24-27).

Even if defendant failed to follow its own policy regarding investigating claims, that alone does not constitute evidence of retaliation.  Defendant can choose how to run its business, "including not to follow its own personnel policies regarding termination of an employee or handling claims of discrimination, 'as long as it does not unlawfully discriminate in doing so.'" Haas v. Kelly Services, Inc., 409 F.3d 1030, 1036 (8th Cir. 2005) (quoting Mayer v. Nextel West Corp., 318 F.3d 803, 810 (8th Cir. 2003)).  In this case, plaintiff has presented no evidence that defendant intended to retaliate against plaintiff in issuing the three write-ups.

Plaintiff next argues that she did not get the promotion to Emergency Room Supervisor because she violated the "golden rule' in reporting a doctor.  As previously discussed at length, this issue was decided in the state court case.  The jury specifically determined that plaintiff was not denied the promotion to Emergency Room Supervisor in retaliation for reporting Dr. McDonald.  As such, plaintiff is precluded from making this argument to establish pretext in this case.

In a related claim, plaintiff contends that nurses talked of the "golden rule," as not going against physicians.  The only statements regarding the "golden rule" other than plaintiff's allegations with regard to the promotion were made by Ms. Masching and Mr. Morgeson.  Ms. Masching testified that she has heard about the "golden rule" at the hospital and that she understands it to mean "you don't go back on a doctor."  (Pl's Ex. C, Deposition of Barbara Masching, p. 7).  Ms. Masching stated that she did not recall who she heard make this statement.

(Id.). Mr. Morgeson, a former employee of Ripley County Ambulance Service, testified that Ms. Mobley told him that the "golden rule" was to "protect the doctor at all costs." (Pl's Ex. K, Deposition of Gary Morgeson, p. 15). These alleged statements regarding the "golden rule" do not lend support to plaintiff's allegations that defendant intentionally retaliated against her in issuing the three write-ups.

Finally, plaintiff cites Ms. Masching's testimony that plaintiff was constantly in the office being written up after the promotion issue. Ms. Masching testified that "it seemed after [the promotion issue] that she was constantly pulled into the nurse's office. I mean she was constantly getting written up." (Pl's Ex. C, Deposition of Barbara Masching, p. 22). Despite Ms. Masching's feeling that plaintiff was being written up constantly, the undisputed facts reveal that plaintiff was written up four times and plaintiff admits that one of the write-ups was justified. Ms. Masching's testimony does not support plaintiff's claim of intentional retaliation.

Plaintiff has failed to produce evidence that creates a fact issue as to whether defendant's proffered reasons are pretextual. Plaintiff has produced no evidence that creates a reasonable inference that defendant acted with an intent to retaliate. Although the first write-up occurred a short time after plaintiff's complaints of retaliation, temporal proximity alone is insufficient to establish pretext in light of defendant's legitimate, non-discriminatory reasons for the write-ups. Defendant has presented evidence that each of the write-ups was issued in response to complaints about plaintiff's conduct from other employees. Regardless of whether plaintiff ultimately engaged in the conduct at issue in the write-ups, defendant has demonstrated a good faith belief that she did.

To survive summary judgment, a plaintiff must set forth affirmative evidence and specific

facts which show that there is a genuine dispute on the issue.  <u>See</u> <u>City of Mt. Pleasant</u>, 838 F.2d at 273-74.  Here, plaintiff makes no such showing on the issue of pretext.  The court finds that the evidence is insufficient for a reasonable trier of fact to infer that defendant issued the three write-ups with an intent to retaliate.  Thus, plaintiff has failed to rebut defendant's legitimate, non-discriminatory reason for issuing the write-ups.  Accordingly, summary judgment will be entered in favor of defendant.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ripley County Memorial Hospital's Motion for Summary Judgment (Doc. No. 21) be and it is **granted**.  A separate order of Summary Judgment will be entered on this date.

Dated this __18th__ day of June, 2009.

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE